UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
  WILLIAM TUCKER,

                      Plaintiff,                        **DECISION**
                                                                   **AND ORDER**
      -against-

                                                                    20-CV-01906 (JMA)(JMW)

  INTERSTATE HOME LOAN CENTERS,
   INC., et al,

                      Defendants.
-------------------------------------------------------------X

**A P P E A R A N C E S:**

Erik H. Langeland
**The Law Offices of Erik H. Langeland, PC**
733 Third Avenue, 15th Floor
New York, NY 1001
*For Plaintiff*

Justin M. Reilly
Neil H. Greenberg
**The NHG Law Group, P.C.**
4242 Merrick Road
Massapequa, NY 11758
*For Plaintiff*

Anna Ceragioli
Haley R. Jenkins
James B. Zouras
**Stephan Zouras, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
*For Plaintiff*

Joseph C. Vozza
**Joseph C. Vozza Attorney At Law PC**
135 Pinelawn Road , Suite 125 North
Melville, NY 11779
*For Defendants*

Daniel Shternfeld
**Dewey Pegno & Kramarsky LLP**
777 Third Avenue
New York, NY 20036
*For Defendants*

Rachel Sara Trauner
**Mitchell Sandler**
1120 20th Street NW, Suite 725
Washington, DC 20036
*For Defendants*

**WICKS,** Magistrate Judge:

In this class and collective action complaint alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") (DE 1), Plaintiff William Tucker ("Tucker") seeks to recover unpaid overtime wages as a loan officer for Defendant Interstate Home Loan Centers, Inc. ("Interstate"). Before the Court at this time is Tucker's motion to quash two non-party subpoenas issued by Defendants upon Tucker's other employers, including his current one. (DE 51.) Defendants oppose. (DE 53.)[1] A hearing on the motion was held on September 6, 2022, during which the Court heard argument from all parties.

## BACKGROUND

In order to appreciate the context of this motion, a brief review of the factual background is in order.

---

[1] Tucker previously filed a motion to quash the same non-party subpoenas on August 3, 2022. (DE 49.) On August 9, 2022, the Court denied that motion without prejudice to renew since Plaintiff did not indicate that the parties first met in good faith to attempt to resolve the issue. (Electronic Order, dated August 9, 2022.) On August 10, 2022, Tucker re-filed his motion to quash indicating the parties have not met and conferred. (DE 51.) Defendants contend that Tucker's subsequent "meet and confer" was not genuine. (DE 53 at 1 n.1.) The requirement that a "meet and confer" take place means that it must be done in good faith. Nothing in the record indicates that the meet and confer was not done in good faith. The mere fact that the parties couldn't resolve the dispute, does not give rise to an inference that it was not done in good faith. During argument on September 6, 2022, Ms. Trauner, on behalf of Defendants, indicated parties again met and conferred to attempt to resolve the issue on September 2, 2022.

2

Tucker was employed by Interstate as a loan officer from June 1, 2017, through March 30, 2018. (*Id.* at ¶ 5.) As part of his job as a loan officer, Tucker originated mortgage loans for Defendants and performed these duties from Interstate's office location at 40 Marcus Dr., Melville, NY, and from a home office. (*Id.* at ¶¶ 14-17.) Tucker alleges that he worked six days a week: Monday through Friday from 10:30am – 10:00pm and on Saturdays from 10:00am – 2:00pm. (*Id.* at ¶ 19.) Each week, Tucker was working 60.5 hours. (*Id.* at 21.) He was paid $10 per hour and was also paid commissions on loans that he worked on, closed, and funded. (*Id.* at 22-23.) Tucker alleges that Defendants did not keep records of his time and failed to pay him and other loan officers time-and-a-half for each hour worked in excess of 40 hours per week. (*Id.* at ¶¶ 24-27.)

On June 16, 2020, Defendants answered, asserting twelve affirmative defenses. The parties attended mediation on July 22, 2020, at which they were unable to resolve the matter. (DE 26.)

An initial scheduling order was adopted by Judge Joan M. Azrack on December 7, 2020. (*See* Electronic Order, dated Dec. 7, 2020.) The matter was then reassigned to the undersigned on May 25, 2021. (*See* Electronic Order May 25, 2021.) In the subsequent months, the parties asked for, and the Court granted, various extensions of time to complete discovery. (*See* DE 30, 34, Electronic Order, dated Jan. 27, 2022, Electronic Order, dated June 14, 2022.)

Depositions of the parties have been conducted, and now comes the non-party subpoenas. On August 3, 2022, Defendants filed Affidavits of Service in connection with two subpoenas for documents served upon (1) Contour Mortgage Corporation ("Contour"), Tucker's current employer and (2) United Mortgage Corp ("United Mortgage"), Tucker's employer prior to Contour. (DE 47-48.) Each subpoena requests the following documents: timecards, Encompass

3

logins and logouts, the total number of applications and total number of loans closed and other written documents pertaining to Tucker's employment at each company. The Contour subpoena seeks records from September 21, 2022, to present. The United Mortgage subpoena seeks records from March 1, 2020, through September 21, 2021. (DE 47-48.)

## ANALYSIS

### *Standing: does Tucker, as a party, have standing to challenge the non-party subpoenas?*

As a threshold matter, Tucker argues that he has standing to challenge the subpoenas served on non-parties Contour and United Mortgage because an individual can challenge a third-party subpoena if he has a privacy interest in the subject matter of the subpoena and he has a privacy interest in his employment records. (DE 51 at 1-2.) Defendants do not counter the issue.

It is well settled that an individual has a privacy interest with respect to the information contained in employment records and thus can challenged non-party subpoenas. *See Rodriguez v. NNR Glob. Logistics USA Inc.*, No. CV141766 (JFB)(AKT), 2016 WL 11673310, at *3 (E.D.N.Y. Mar. 31, 2016) ("Here, the plaintiff has a privacy interest with respect to information contained in her employment records, and thus, can challenge the subpoenas"); *Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16 CIV 1805(JPO)(JCF), 2017 WL 3055098, at *6 (S.D.N.Y. July 18, 2017) ("An employee has a privacy interest in her employment records sufficient to give her standing to object to a subpoena for those records served on a non-party employer"). Therefore, Tucker does have standing to quash the subpoenas.

### *Are the Subpoenas Unduly Burdensome?*

Tucker next argues the subpoenas should be quashed because they are unduly burdensome insofar as they require the production of documents that are wholly irrelevant to the issues in this case. (DE 51 at 2.) Tucker maintains that the issue in this case turns on the number

4

of unpaid overtime hours worked by Tucker at Interstate and thus records from subsequent employers are irrelevant. (*Id.*)

Defendants argue the information sought from Contour and United Mortgage is indeed relevant because Tucker testified at his deposition that he works the same number of hours at Contour as he did at Interstate. (DE 53 at 2.) As it relates to the Contour subpoena (Tucker's current employer) Defendants contend they "should be allowed to verify the number of hours he works at his current job" because he claims to work the same number of hours as he did at Interstate and that they are entitled to information concerning the number of loan applications, loans closed, and pricing engine logins and logouts at Contour because "it would stand to reason" that if Tucker works the same hours at Contour, his productivity information would essentially be the same as his employment with Interstate. (*Id.*)

Defendants contend they are entitled to Tucker's employment records from United Mortgage for the same reason. (*Id.*) Additionally, Defendants point to what they believe is evidence of impropriety. (*See id.*) For instance, they argue that they are entitled to information that may "shed light" on why Tucker concealed the existence of this employer during his deposition. (*Id.*)[2] Defendants point out that in each motion to quash Tucker represents that he worked at Interstate through 2020 but he only worked at Interstate through 2018. (*Id.*)[3] Further, an attorney who has appeared for Plaintiff, Justin M. Reilly of The NHG Law Group, P.C., also

---

[2] The deposition transcript demonstrates that Tucker was asked about the jobs he held subsequent to Interstate, during which he testified that after Interstate he did not work at a financial institution until Contour. (DE 53-1; 108:8-21.)

[3] Although it appears counsel made this mistake in both motions, the Complaint – which governs – alleges Tucker worked at Interstate from June 1, 2017, through March 30, 2018. (DE 1, ¶ 5.) During argument, Counsel for Plaintiff confirmed that the incorrect dates in the letter motions were simply a drafting error and that Tucker's employment with Interstate ended in 2018.

5

apparently represents the interests of United Mortgage and has objected to the subpoena. (*Id.*; DE 53-2.)[4]  Defendants contend that they are entitled to information from United Mortgage to uncover why Tucker and counsel are trying to prevent Defendants from obtaining information from United Mortgage and to ascertain "why Plaintiff has potentially committed perjury in attempting to conceal the existence of that employment." (*Id.*)

Anticipating Defendants' productivity comparison argument (using Tucker's subsequent employment records to show how much he worked at Interstate), Tucker asserts that it is Interstate's burden to maintain records of the hours worked and in the event an employer, like Interstate, fails to keep such records, the employee "need only show the amount and extent of that work as a matter of just a reasonable inference." (DE 51 at 2.)  Tucker argues his employment at other companies will not demonstrate the amount of hours he worked at Interstate. (*Id.* at 1-2.)

Rule 45 provides that "[o]n timely motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv). "The decision whether to quash or modify a subpoena is committed to the sound direction of the trial court." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011) (citations omitted).

"A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (internal quotes omitted). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document

---

[4] United Mortgage objects to the subpoena on the grounds it seeks irrelevant information, privileged information and/or confidential business information, and is solely for the purposes of harassment, embarrassment, annoyance, or other improper purposes. (DE 53-2.)

requests, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 293–94 (E.D.N.Y. 2011) (internal quotes omitted).

Long ago the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), held that where an employer maintains inadequate records, a plaintiff must make only a minimal showing of underpayment, and the burden then shifts to defendants to disprove plaintiff's assertions. *Hernandez v. NJK Contractors, Inc.*, No. 09CV4812ARRVMS, 2013 WL 12363005, at *6 (E.D.N.Y. Feb. 12, 2013). A plaintiff can meet that initial burden by relying on recollection alone and then the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. *Id.* "Under New York law, the employer can meet this burden only by showing by a preponderance of the evidence that the employee was properly compensated." *Id.*

It is far from clear how employment records from Tucker's subsequent employers would adduce evidence showing the amount of work performed Tucker performed *at Interstate* to satisfy the *Mt. Clemens Pottery* burden shift. Defendants provide no authority, nor has the Court been able to identify any, which supports using productivity records from other, subsequent employers to demonstrate the number of hours worked at the Defendant company in a matter concerning unpaid overtime hours. It is more likely that this information would be irrelevant to the overtime hour issue here as there could be various reasons why Tucker's productivity information from subsequent employers would vary from his productivity at Interstate. For example, his productivity could be lower at a subsequent employer because Tucker was new employee, in training, using new or different computer systems, etc. Concomitantly, his

7

productivity could be even higher there because Tucker received better managerial support or was offered better resources. In short, determining productivity from other jobs bears little or no relevance to the claims of underpaid overtime compensation here.

     What is more, this information could have been obtained through Tucker himself and less intrusive means. *See Moll v. Telesector Res. Grp., Inc.*, No. 04-CV-0805S(SR), 2016 WL 6093995, at *3 (W.D.N.Y. Oct. 19, 2016) ("The information Verizon seeks, while relevant to plaintiff's claim of damages, should be available from plaintiff through routine discovery") *citing Warnke v. CVS Corp.*, 265 F.R.D. 64, 70 (E.D.N.Y. 2010) (defendant is not entitled to obtain compensation information directly from plaintiff's employers, but must obtain the information from less intrusive means where possible). As Defendants stated in opposition, Tucker has already testified as to the hours he works at Contour, stating he works 50-60 hours per week. (DE 53-3 at 15:4-16; 99:6-19.) It does not appear that Defendants then asked about Tucker's performance or productivity there. Defendants perhaps could have asked how many loan applications he processes in that amount of time. (*See* DE 53-3.) Defendants could have perhaps first tried to access this information through less intrusive means by questioning Tucker at his deposition, seeking certain payroll records from Tucker himself, or propounding interrogatories or requests to admit. "As courts within the Second Circuit have recognized, "[b]ecause of the direct negative effect that disclosures of disputes with past employers can have on present employment, subpoenas in this context, if warranted at all, should be used only as a last resort." *Moll*, 2016 WL 6093995, at *3.

     To the extent Defendants seek to use the records to attack Tucker's credibility—using Contour records to "verify the number of hours [Tucker] works at his current job as he claims to work the same number of hours in this job as he did at Interstate" and United Mortgage records

8

to explain why Tucker allegedly is "attempting to conceal the existence of that employment"—such evidence would be barred under Federal Rule of Evidence 608.[5] *See Rodriguez*, 2016 WL 11673310, at *4 ("Moreover, to the extent Defendants seek to attack Plaintiff's credibility by showing that the information contained in the applications she submitted to her former employers is inconsistent with that submitted to NNR, any such evidence would be barred under Federal Rule of Evidence 608") (quotes omitted). Defense counsel was unable articulate any other grounds under which the non-party subpoenas would produce information relevant to this action.

## CONCLUSION

For the foregoing reasons, the motion to quash the two non-party subpoenas (DE 51), is hereby GRANTED.

Dated: Central Islip, New York
September 6, 2022

S O  O R D E R E D:

/S/ *James M. Wicks*
James M. Wicks
United States Magistrate Judge

---

[5] Rule 608 provides that, other than evidence of criminal convictions, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). The Rule allows these matters to be inquired into on cross-examination, but this permits a party only to elicit testimony from the witness about these instances, not to introduce documentary evidence.

9