IN THE UNITED STATES US DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM LEE TUCKER , Individually, and on Behalf of All Others Similarly Situated, <br><br>       Plaintiff, <br><br> v. <br><br> **INTERSTATE HOME LOANS CENTER, INC., ALEX NIVEN, TERENCE CULLEN, KENNETH TUMSUDEN, ELLEN ZUCKERMAN, AND JEANNE WICKS** <br><br>       Defendants. | Case No. 2:2020-cv-01906 (JMA/JMW) <br><br> **ECF CASE** <br><br> **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SETTLEMENT APPROVAL OF A FAIR LABOR STANDARDS ACT CASE (UNOPPOSED)** |

I. PRELIMINARY STATEMENT

Plaintiff, William Lee Tucker, seeks approval of a settlement reached in a settlement conference with this Count on November 9, 2022. The total settlement payment is $47,500.00 paid in equal installments over four months. Plaintiff will receive $28,585.87. Plaintiff's Counsel seek one third of the settlement or $15,8333.33 in attorneys' fees and $3,080.80 in costs, which works out to a rate of less than $100 per hour.  The terms of the settlement agreement (the "Agreement") are made between Plaintiff and Defendants, Interstate Home Loans Center, Inc., Alex Nive, Terence Cullen, Kenneth Tumsuden, Ellen Zuckerman, and Jeanne Wicks,  (collectively, "Defendants") (Plaintiff and Defendants are collectively referred to herein as the "Parties"). The Agreement resolves Plaintiff's claims asserted against Defendants, including claims under the Fair Labor Standards Act, 29 U.S.C. section 201 *et. seq.* ("FLSA"). A copy of the Settlement Agreement is attached to the Declaration of Erik H. Langeland, Esq. (Langeland Decl.") as **Exhibit A** for the Court's review and approval. The Agreement represents a good faith effort between

1

experienced counsel to negotiate the settlement of a *bona fide* dispute between the Parties in an action under the FLSA and the New York Labor Law ("NYLL"). The Parties, who engaged in an arm's-length, good faith negotiation, reached a settlement at a settlement conference that provides Plaintiff with a substantial recovery of his claimed unpaid wage damages. Plaintiff submits that this settlement is fair and reasonable because it duly considers the Parties' respective risk burden if this litigation continues. Accordingly, Plaintiff respectfully requests that the Court approve the Agreement as submitted and dismiss this action with prejudice.

II.     PLAINTIFFS' ALLEGATIONS AND DEFENDANTS' RESPONSES

On April 4, 2020, Plaintiff filed this wage-and-hour lawsuit against Defendants alleging FLSA and NYLL violations. [D.E. 1]. Plaintiff contends that during his employment with Defendants, he was not paid overtime compensation for any hours worked in excess of forty (40) each week and he was not provided with wage statements. During a settlement conference with this Court, Plaintiff's counsel calculated a damages chart for Plaintiff (a summary of which is attached as **Exhibit B** to the Langeland Decl.). Based on these calculations, Plaintiffs' reasonable estimates of his claimed unpaid overtime wages under the FLSA are: $53,069.46. In preparing the damages chart, Plaintiffs' counsel did not account for any of Defendants' defenses, as discussed herein.

Defendants do not agree with Plaintiff. Defendants dispute Plaintiff's allegations and contend that he was always paid properly under the FLSA and the NYLL. Defendants further dispute the hours Plaintiff claims to have worked each week and claim that Plaintiff worked much less than they claim each week.

As stated above, Plaintiff does not agree with Defendants. Thus, there is a *bona fide* dispute between the Parties regarding Plaintiff's wage and hour claims. This settlement constitutes the

Parties' good-faith effort to resolve this *bona fide* dispute in an amicable fashion through arm's length bargaining.

III.   SETTLEMENT NEGOTIATIONS

The Parties exchanged several offers and counteroffers leading up to the settlement conference with this Court. At the end of the settlement conference, Defendants offered Plaintiff $47,500.00 paid in equal installments over four months. Plaintiff accepted this good faith offer. Plaintiff recognizes that (i) Defendants' agreement to settle this matter does not constitute an admission of any liability whatsoever; (ii) Defendants continue to deny Plaintiffs' claims; and, (iii) Defendants have agreed to this amount solely to avoid the risks and expenses of protracted litigation.

Of the agreed upon settlement amount, Plaintiff will receive $28,585.87, which compensates Plaintiff for his claimed unpaid overtime wages under the FLSA, all of which Defendants vehemently contend he is not entitled to. Additionally, under the Agreement, Defendants are paying Plaintiff's attorneys' fees in the amount of $15,8333.33—one third of the settlement—and costs of $3080.80.

THE SETTLEMENT IS FAIR AND REASONABLE

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145,

3

2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

It is apparent that the Agreement in this matter is a fair and reasonable resolution of the *bona fide* disputes between the Parties. This is because the Agreement: (1) fairly accounts for Plaintiffs' possible recovery; (2) enables the Parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses; (3) accounts for the risks in proceeding with the litigation; and (4) is the product of arm's-length bargaining between experienced counsel which was completely devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

    1. *The Agreement Fairly Accounts for Plaintiff's Possible Recovery*

As noted above, Plaintiff will be receiving a recovery of $28,585.67. Further, their attorneys' fees and costs are being paid by Defendants in the amount of $15,833.67 and $3,080.80 respectively. Clearly, it cannot be said that the Agreement constitutes "a mere waiver of statutory rights brought about by an employer's overreaching." To the contrary, the Agreement only resolves the *bona fide* dispute between the Parties relating to the payment of Plaintiffs' wages and

4

the other claims raised in the Complaint. The Agreement does not contain a confidentiality provision, a general release, or a non-disparagement clause.

Further, Plaintiff is satisfied with the settlement amount and voluntarily and willingly entered into the Agreement without coercion or duress. Plaintiff is represented by experienced counsel who have litigated hundreds of cases in the Southern and Eastern Districts of New York, the majority of which involve claims under the FLSA and the NYLL. Accordingly, it is apparent that the Agreement amount fairly accounts for Plaintiff's possible recovery in this matter.

    2.    *The Risk and Expenses Faced by the Parties*

Both Parties in this matter face substantial risks in proceeding forward in this litigation. Defendants are confident that they could prevail at trial on their defenses. Additionally, and as noted *supra*, if Defendants did so prevail, Plaintiff faces the possibility of receiving no recovery at all. Further, Plaintiff faces the prospect of waiting months, if not years, for the matter to proceed through remaining discovery, motion practice and, eventually, trial. Importantly, Interstate is a mortgage bank and asserted that interest rate increases have severely impacted their business. Had Plaintiff not accepted Defendants' good faith offer and later prevailed in this Action, he may have had to chase an empty judgment.

Conversely, while Defendants are confident that they would be able to severely undermine, if not defeat, Plaintiff's claims, they are also mindful that this would have only occurred after a protracted litigation at significant financial defense costs. And if Plaintiff prevails at trial, Defendants could face significant liability for unpaid wages, civil penalties, interest, and attorneys' fees and costs. Thus, the costs of litigation and prospects of liability for Defendants clearly weigh in favor of early resolution. Accordingly, all Parties face substantial risks in proceeding forward with the litigation. As well, even though it is not necessarily a factor under *Wolinsky,* the Court

5

should also not lose sight of the fact that litigation imposes a mental toll upon both Plaintiff and Defendants no matter who wins or loses. *See Brown v. TD Bank, N.A.,* No. 15-CV-5474, 2016 WL 1298973, at *7 (E.D. Pa. Apr. 4, 2016) ("Litigation is expensive, time-consuming, and emotionally draining."). Settlement ameliorates this burden too.

Accordingly, Plaintiff submits that for these reasons, the Parties' settlement is fair and reasonable.

      3.     *The Agreement was the Product of Arm's-Length Bargaining Devoid of Fraud or Collusion*

Finally, it cannot be disputed that the Agreement was the product of legitimate bargaining between experienced counsel which was devoid of any semblance of fraud or collusion. Indeed, the Parties were able to resolve this controversy, in large part, because of the hard work and experience of their respective attorneys, as well as the invaluable assistance of this Court. Throughout the process, the Parties' respective counsel zealously advocated on behalf of their clients, from negotiating the amount of the settlement, to the terms and conditions of same. Far from the product of fraud or collusion, the Agreement constitutes an effort by experienced labor and employment counsel for all Parties to resolve the dispute under the best possible circumstances for their respective clients. Accordingly, the Agreement should be approved by the Court.

IV.    PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES SHOULD BE APPROVED

The agreed upon settlement amount is inclusive of attorneys' fees and costs. Plaintiffs' counsel is seeking one-third of the settlement amount as a fee. *See Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). *See also Castaneda v. My Belly's Playlist LLC*, No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *Gaspar v.*

6

*Pers. Touch Moving, Inc.*, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) ("This fee arrangement [of one third of the settlement amount plus costs] is routinely approved by courts in this Circuit").

"Even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar 'cross-check' and 'compare the fees generated by the percentage method with those generated by the lodestar method.'" *Llamas v. Cor J. Sea Food Corp.*, 21-cv-00248 (JMW), D.E. 21 (E.D.N.Y. November 10, 2021), unreported (citing *Mobley v. Five Gems Mgmt. Corp.*, 17-cv-9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted). Once an initial lodestar computation has been made, district courts have the discretion to "increase the lodestar by applying a multiplier based on other less objective factors, such as the risks of the litigation and the performance of the attorneys." *Pucciarelli v. Lakeview Cars, Inc*, 16-CV-4751, 2017 WL 2778029 at *2 (E.D.N.Y. June 26, 2017) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "Courts regularly award multipliers from two to six times the lodestar." *Cohan v. Columbia Sussex Management, LLC*, 12-CV-3203, 2018 WL 4861391 at *5 (E.D.N.Y. Sept. 28, 2018) (approving a 2.3 multiplier as "well within the range awarded" and citing S.D.N.Y. cases where multipliers of 2.09, 3.97, and 4.65 were found reasonable); *Weston v. TechSol, LLC*, 17-CV-0141, 2018 WL 4693527 at *6 (E.D.N.Y. Sept. 26, 2018) (quoting *Monserrate v. Tequipment, Inc.*, 11-CV-6090, 2012 WL 5830557 at *3 (E.D.N.Y. Nov. 16, 2012); *Donnelly v. Peter Luger of Long Island, Inc.*, 13-CV-1377, 2014 WL 12769046 at *8 (E.D.N.Y. Nov. 13, 2014) (finding a lodestar multiplier of 2.35 to be "at the lower range of

what courts have approved" and collecting cases where courts in the Second Circuit approved lodestar multipliers of 3.3, 3.53, 3.96, 4.65, 5.3, and 5.5).

Importantly, as the Second Circuit noted in *Fisher v. SD Prot. Inc.*, 948 F.3d 593 (2d Cir. 2020), "[n]either the text nor the [remedial] purpose of the FLSA … supports imposing a proportionality limit on recoverable attorneys' fees." *Id.* at 603. The Court explained that "[b]y implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on 'run of the mill' FLSA cases where the potential damages are low and the risk of protracted litigation high. Fee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" *Id.* (citing *Sand v. Greenberg*, 08-CV-7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)).

Plaintiff's Counsel's efforts to date have been without compensation and its entitlement to payment has been wholly contingent upon the result achieved. As with every other FLSA case, Plaintiff's Counsel stood to gain nothing in the event this litigation was unsuccessful while incurring substantial and unrecoverable costs. There have been numerous cases where Plaintiff's Counsel's lodestar has substantially exceeded one-third of the settlement amounts that it has negotiated on behalf of its clients.

Accordingly, Plaintiff's counsel will receive $15,8333.33 as attorneys' fees and $3,080.80 in reimbursed costs. A lodestar analysis is discussed in the accompanying Declaration of Erik H. Langeland, Esq. It is respectfully submitted that the attorneys' fees and costs set forth in the Agreement are fair and reasonable.

V.    CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court approve the Parties' Agreement and dismiss this case with prejudice.

January 18, 2023

Respectfully Submitted,

/s/ Erik H. Langeland
Erik H. Langeland
733 3rd Avenue, 16 Floor
New York, NY 10017
(212) 354-6270
(646) 650-2782 fax
elangeland@langelandlaw.com

Justin Reilly
NHG Law Group, P.C.
4242 Merrick Road
Massapequa, New York 11758
Tel: 516.228.5100

James B. Zouras
STEPHAN ZOURAS, LLP
100 North Riverside Plaza, Suite 2150
Chicago, IL 60606
(312) 233-1550